[Cite as *State v. Branch*, 2013-Ohio-2350.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                      :          C.A. CASE NO.    25261

v.                                               :          T.C. NO.    12CR174

DANIELLE N. BRANCH                               :          (Criminal appeal from
                                                            Common Pleas Court)
    Defendant-Appellant                     :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    7th    day of    June   , 2013.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

SUSAN F. SOUTHER, Atty. Reg. No. 0058529, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

      **{¶ 1}** After the trial court denied her motion for intervention in lieu of

conviction (ILC), Danielle N. Branch pled no contest to grand theft in the amount of $7,500 or more, but less than $150,000, a fourth-degree felony. The trial court sentenced Branch to community control for up to five years. Branch appeals from the trial court's judgment, claiming that the court erred in denying her motion for ILC. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} According to the ILC eligibility report, Branch's mother was the full-time housekeeper for Sam and Tamera Caras. In November and December 2011, Branch, then 22 years old, was also employed by the Carases to provide extra help over the holiday season. During that time, five items of jewelry were found to be missing from the home. The Carases told their full-time housekeeper about the thefts, and the housekeeper confronted her daughter, Branch, who admitted to taking the jewelry. Branch later admitted to the police that she stole three rings from Mrs. Caras, but she denied taking the other two pieces of jewelry. Branch and her boyfriend sold two of the rings at a pawn shop. Branch admitted that they bought heroin with the money that they received.

{¶ 3} According to the Carases, the total value of all of the missing jewelry was $23,853. The value of the jewelry that Branch admitted to taking was $14,425.

{¶ 4} In March 2012, Branch was indicted on grand theft of miscellaneous jewelry having a value of $7,500 or more, but less than $150,000, in violation of R.C. 2913.02(A)(1). On April 19, 2012, Branch filed a motion for ILC, stating that her drug use was a factor in the commission of the offense. Although we find no entry in the record referring the matter for an assessment of Branch's eligibility for ILC, the ILC eligibility report reflects that the case was referred for an assessment on April 19, 2012, and the report

was completed on May 15 or 16. The assessment concluded that Branch was statutorily eligible for ILC.

**{¶ 5}** On May 17, 2012, Branch came before the court with different counsel (both were from the same law office). Counsel asked the court for a one-week continuance, stating that she (counsel) had "just met her [Branch] today" and that counsel had not talked with Branch about the ILC report. Without addressing the request for a continuance, the court orally denied the motion for ILC, finding that ILC would demean the seriousness of the offense. The court provided three reasons for its ruling: (1) the amount of the offense was "allegedly $28,853 [sic]," (2) the offense allegedly involved "essentially a violation of trust," as the defendant was "permitted to be in the victim's house to clean house and exploiting that trust and stealing these items," and (3) the impact of the offense on the victim. The court set a status conference for the following week.

**{¶ 6}** On May 24, 2012, the court held a hearing at which Branch and several other individuals entered pleas in their respective cases. The trial court stated that, unlike some of the other individuals there, who would be granted ILC, Branch would be entering a no contest plea to grand theft, with an agreement that she would be sentenced to community control. The court noted that it had "previously denied Branch's motion for ILC for reasons the court placed into the record last time she was in court."

**{¶ 7}** Prior to taking Branch's plea, defense counsel and the trial court had the following exchange:

[DEFENSE COUNSEL]: * * * I just want to, for the record, you are denying her hearing on her motion for intervention in lieu of conviction.

THE COURT: Right. And you mentioned that in chambers and the ILC statute under House Bill 86 specifically explicitly states that the court may deny an ILC without a hearing so I know you're requesting a hearing but the court denies that request.

[DEFENSE COUNSEL]: Correct.

The trial court then accepted and found Branch guilty on her no contest plea, but it did not sentence her, because the parties disagreed on the amount of restitution. The court scheduled a restitution hearing for June 14. On June 14, 2012, the parties stated that they had reached an agreement that Branch would pay restitution of $14,475.[1]

{¶ 8} The trial court sentenced Branch to community control sanctions, which included intensive supervision, restitution of $14,475, a drug or alcohol assessment and successful completion of any recommended treatment, attending the probation department's theft clinic, and completion of the drug court program.

{¶ 9} In her sole assignment of error, Branch claims that "[t]he trial court abused its discretion when it denied appellant's motion for intervention in lieu of conviction."

{¶ 10} ILC is a statutory creation that allows a trial court to stay a criminal proceeding and order an offender to a period of rehabilitation if the court has reason to believe that drug or alcohol usage, mental illness, or being a person with an intellectual disability was a factor leading to the criminal behavior. *See* R.C. 2951.041(A); *See State v. Massien*, 125

---

[1] The record does not explain the discrepancy between the value of the three rings that Branch admitted to stealing, as relayed in the ILC eligibility report ($14,425), and the agreed amount of restitution ($14,475).

Ohio St.3d 204, 2010-Ohio-1864, 926 N.E.2d 1282, ¶ 9.

"In enacting R.C. 2951.041, the legislature made a determination that when chemical abuse is the cause or at least a precipitating factor in the commission of a crime, it may be more beneficial to the individual and the community as a whole to treat the cause rather than punish the crime." *Massien* at ¶ 10, *quoting State v. Shoaf*, 140 Ohio App.3d 75, 77, 746 N.E.2d 674 (10th Dist.2000) (referring to a previous, but similar, version of R.C. 2951.041). ILC is not designed to be punishment, but rather an opportunity for certain offenders to receive help for their dependence without the ramifications of a felony conviction. *Id.*

{¶ 11} The trial court may reject an offender's request for ILC without a hearing. R.C. 2951.041(A)(1). However, if the court elects to consider an offender's request, the court must conduct a hearing to determine whether the offender is statutorily eligible for ILC and must stay all criminal proceedings pending the outcome of the hearing. *Id.* If the court schedules a hearing, the court must order an assessment of the offender for the purpose of determining the offender's eligibility for ILC and recommending an appropriate intervention plan. *Id.*

{¶ 12} We find the language of R.C. 2951.041(A)(1) to be inartful, as a trial court, by definition, "considers" an offender's request for ILC by making *any* ruling. But under R.C. 2951.041(A)(1), the court must hold a hearing and order an assessment when it elects

to "consider" an offender's request for ILC. One reading is that a court can reject an ILC motion out of hand without even "considering" statutory eligibility or discretionary factors. However, we have held that a blanket policy to deny ILC motions is error. *E.g.*, *State v. Nealeigh*, 2d Dist. Champaign No. 2010CA28, 2011-Ohio-1416, ¶ 28, citing *State v. Rice*, 180 Ohio App.3d 599, 2009-Ohio-162, 906 N.E.2d 506 (2d Dist.). Another reading is that if a defendant is statutorily eligible (i.e., none of the factors in R.C. 2951.041(B) makes the applicant ineligible) and the trial court "considers" the eligible offender's being granted ILC, the court must order an assessment and hold a hearing. The statute also leaves unanswered what is necessary to constitute a hearing; is it a full evidentiary hearing, or the opportunity to be heard, similar to allocution?

{¶ 13} The trial court's decision not to have a hearing to determine a defendant's eligibility is significant, because such a decision does not affect a substantial right; the defendant has no legal right to a hearing. *State v. Stanton*, 2d Dist. Montgomery No. 25298, 2013-Ohio-1825, ¶ 13, following *Rice*. We have thus held that the trial court's denial of ILC without a hearing is not subject to appellate review (although a plea or finding of guilty thereafter is appealable). *Id.*

{¶ 14} Prior to Branch's plea, her attorney confirmed with the trial court that it was denying her motion without a hearing, even though the court obtained an ILC eligibility report and then denied Branch's motion based on an eligibility requirement. However, Branch does not argue that the trial court erred in denying her a hearing when determining her eligibility. Given the particular circumstances and the arguments presented in this case, we need not resolve any ambiguity in R.C. 2951.041(A)(1). *Contrast Stanton* (no

assessment was ordered and the court did not hold a hearing, precluding appellate review).

{¶ 15}    In order for an offender to be statutorily eligible for ILC, the trial court must find that all ten of the criteria set forth in R.C. 2951.041(B) are met.  Of relevance to Branch, R.C. 2951.041(B)(6) provides, as a prerequisite for ILC eligibility, that "[t]he offender's drug usage, alcohol usage, mental illness, or intellectual disability, whichever is applicable, was a factor leading to the criminal offense with which the offender is charged, intervention in lieu of conviction *would not demean the seriousness of the offense*, and intervention would substantially reduce the likelihood of any future criminal activity." (Emphasis added.)    "Eligibility determinations are matters of law subject to de novo review."  *State v. Baker*, 2d Dist. Montgomery No. 24510, 2012-Ohio-729, ¶ 8.

{¶ 16}    The trial court determined that ILC would demean the seriousness of Branch's grand theft offense, citing the value of the items stolen, the violation of trust involved in her offense, and the impact that the offense had on the victims.  In reaching its conclusions, the court considered the ILC report, which detailed how Branch had admittedly stolen three items of jewelry valued at over $14,000, that she was accused of stealing two other items of jewelry worth approximately $9,000, and the impact on the victim and the circumstances of the offense.

{¶ 17}    Upon review of the record, we disagree with the trial court's determination that ILC would, as a matter of law, demean the seriousness of the offense in Branch's case. First, the trial court suggested that Branch held a "position of trust" with the Carases and that she betrayed that trust.  In the context of sentencing, "position of trust" is a term of art. The Ohio Supreme Court clarified that both public and private persons can hold a position of

trust, but it rejected the contention that a person is "categorically ineligible for ILC based upon a finding that the offender, as a private individual, breached any moral, ethical, or filial duty." *Massien* at ¶ 33. The court clarified that a private person holds a position of trust when he or she occupies "a special relationship of trust and confidence equivalent to a fiduciary relationship" and that such person is ineligible for ILC when the offense relates to that fiduciary relationship. *Id*. at ¶ 34. Branch did not hold a position of trust with the Carases, and she is not ineligible for ILC on that basis.

{¶ 18} Nor do we find that the Carases' response to Branch's offense indicated that ILC would demean the seriousness of the offense. Mrs. Caras was understandably angry and upset about how this crime occurred and the loss of her jewelry, which she stated was irreplaceable, and the Carases decided to install a security system at their home. However, the Carases' reaction was not atypical for such an offense, and fortunately there is no indication that the impact on them was unusually serious.

{¶ 19} The trial court also emphasized the value of the items stolen. The ILC report indicates that Branch stole five pieces of jewelry from her employer's home, which were collectively valued over $20,000. The three items she admitted to stealing were valued over $14,000. Although we agree that the monetary value involved in the offense may be relevant to whether an offender should be placed on ILC, we do not believe that the amount in this case necessarily precludes Branch from eligibility. *See State v. Drake*, 192 Ohio App.3d 216, 2011-Ohio-25, 948 N.E.2d 965 (2d Dist.) (nonsupport of dependents arrearage of $13,333.51); *State v. Sorrell*, 187 Ohio App.3d 286, 2010-Ohio-1618, 931 N.E.2d 1135 (2d Dist.) (nonsupport arrearage of $27,748).

{¶ 20} Even when an offender satisfies all of the statutory eligibility requirements for ILC, the trial court has discretion to determine whether a particular offender is a good candidate for intervention. *Massien* at ¶ 11. The decision whether to grant a motion for ILC lies within the trial court's sound discretion, and an appellate court will not reverse the trial court's ruling absent an abuse of that discretion. *State v. Adkins*, 2d Dist. Miami No. 2011 CA 28, 2012-Ohio-4744, ¶ 16.

{¶ 21} Although we disagree with the trial court's legal conclusion that Branch was not eligible for ILC because ILC would demean the seriousness of the offense, we nevertheless find that the trial court did not abuse its discretion in denying Branch's motion for ILC. While Branch did not occupy a "position of trust" with the Carases, the trial court reasonably considered that Branch had been allowed into the Carases' home to provide additional help during the holiday season, and that Branch "exploited" their trust by stealing five irreplaceable items of jewelry of substantial value. The ILC report further reflected that Branch's actions caused her mother to lose her job.

{¶ 22} We also note that the ILC report indicated that Branch had new misdemeanor charges in May 2012, resulting in the revocation of her conditional own recognizance bond in this case on May 15, 2012. (A COR bond was again set a few days later.) At the time of the ILC report, Branch was no longer living with her mother, and her residence was unknown. Branch missed a Crisis Care assessment and had not followed through with rescheduling the assessment.

{¶ 23} In summary, upon review of the record, the trial court did not abuse its

discretion in denying Branch's motion for ILC.[2]  The assignment of error is overruled.

{¶ 24}  The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. concurs in judgment only.

WELBAUM, J., concurring.

{¶ 25}  I agree with the judgment of the court but affirm for different reasons. There are potentially three decision points for the trial judge in the ILC law.  Remarkably, there is a different level of appellate review for each.  I believe the trial court decided the request at the first stage.  It appears Judge Froelich affirms based on evaluation of the third stage.

{¶ 26}  The first decision is whether the trial court will accept or deny a request for intervention under 2951.041(A)(1) without a hearing.  As Judge Froelich noted, if the trial court denies the request at this stage it is not subject to appellate review absent a showing that the court made the decision based upon a blanket policy that any and all requests are denied without consideration.  *State v. Rice*, 180 Ohio App.3d 599, 2009-Ohio-162, 906 N.E. 2d 506 (2d Dist.); *State v. Nealeigh,* 2d Dist. Champaign No. 2010CA28, 2011-Ohio-1416.  In *Rice*, we found that

> * * * abuse of discretion in denying a defendant's 2951.041 motion
> without a hearing is harmless error that an appellate court is charged by
> Crim.R.52(A) to disregard, because the defendant could have suffered no

---

[2] Although not relevant to our analysis, the trial court's docket reflects that Branch's community control in this case was revoked on April 19, 2013, and she was sentenced to seven months in prison.

prejudice to a legal right enforced and protected by law as a result.

     * * * [B]ecause that section creates not a right of relief but instead a privilege that the court possesses "considerable discretion" to deny, * * * we find that the denial of defendant's request was harmless error and therefore not a basis on which to reverse the judgment of conviction from which the defendant's appeal was taken.

*Rice* at ¶ 14-15.

{¶ 27} If the trial court actually considers the request at the first stage, a denial will be affirmed.

{¶ 28} The second decision point occurs if the trial court elects to consider the request. After the mandatory hearing and consideration of the assessment the court will determine whether all ten of the criteria in 2951.041(B) are met. At this stage, the trial court's eligibility determinations are subject to de novo review on appeal. Here, Judge Froelich disagreed with several of the trial court's determinations. In my view, the trial court did not err in its findings. If the defendant does not meet all ten criteria the trial court shall deny the request.

{¶ 29} Thirdly, in the event the defendant satisfies all of the criteria, the court then must decide whether to grant the offender ILC. Appellate review of this decision is by an abuse of discretion standard. Consequently, even if an offender is successful in persuading the court that all eligibility requirements have been satisfied, the trial court has the discretion to deny the ILC request.

{¶ 30} It appears Judge Froelich affirms because he finds that at the third decision

point, the trial court did not abuse its discretion by denying the request even though Judge Froelich found the defendant met all statutory criteria. However, in my view, the trial court denied the request at the first decision point. Since the trial court did not make its initial decision based on a blanket policy to deny all ILC requests, I affirm the trial court.

. . . . . . . . . .

Copies mailed to:

Michele D. Phipps
Susan F. Souther
Hon. Dennis J. Langer